509 S.E.2d 333

**ROY YOUNG & SONS PAVING, INC., a Corporation, Plaintiff Below, Appellee,**

v.

**John L. ASH and Fast Lube America, Inc., a Corporation, Defendants Below, Appellants.**

**No. 25213.**

Supreme Court of Appeals of West Virginia.

Submitted Nov. 12, 1998.

Decided Nov. 20, 1998.

Dissenting Opinion of Justice Starcher Dec. 16, 1998.

---

Starcher, J., filed dissenting opinion.

Samuel F. Hanna, Hanna Law Office, Charleston, West Virginia, Attorney for the Appellants.

John E. Dorsey, Charleston, West Virginia, for the Appellee.

PER CURIAM:

This is an appeal by John L. Ash and Fast Lube America, Inc., appellants/defendants [1] (hereinafter collectively referred to as "F.L.A."), from an order by the Circuit Court of Kanawha County denying their post-trial motion for a new trial. Roy Young & Sons Paving, Inc., appellee/plaintiff (hereinafter referred to as "Young & Sons Paving"), brought this action alleging that F.L.A. breached a contract by failing to pay for work performed by Young & Sons Paving. A jury trial was held on July 7, 1997, and a verdict was returned in favor of Young & Sons Paving. Thereafter, F.L.A. filed a post-trial motion seeking a new trial on the ground that the trial court erroneously permitted Young & Sons Paving to call the court bailiff as a rebuttal witness. The sole issue presented in this appeal is whether the court bailiff was properly permitted to testify as a rebuttal witness. Upon a review of the parties' arguments, the record evidence, and the pertinent authorities, we affirm the decision of the Circuit Court of Kanawha County.

## I.

### FACTUAL BACKGROUND

In October of 1995, Young & Sons Paving and F.L.A. entered into a contract requiring Young & Sons Paving to pave a parking area owned by F.L.A.[2] Young & Sons Paving completed the work on December 4, 1995. Thereafter, F.L.A. refused to pay Young & Sons Paving. On July 11, 1996, Young & Sons Paving instituted an action seeking payment under the contract. F.L.A. filed an answer and counterclaim. In its counterclaim, F.L.A. sought to recover for alleged damage that was done to its property by Young & Sons Paving.

The case went to trial before a jury on July 7, 1997. Before the trial started, the trial court ordered sequestration of all wit-

nesses. During the course of F.L.A. Inc.'s case-in-chief, Mr. Ash testified. While testifying, Mr. Ash recounted an unsolicited event involving Charles Young, a principal owner of Young & Sons Paving. Mr. Ash testified that Mr. Young visited his residence while in an intoxicated state and attempted to collect the debt. Mr. Ash further testified that Mr. Young's unruliness forced him to call the police.

After each side rested its case-in-chief, the court bailiff, Deputy Keith L. Washburn,[3] approached Young & Sons Paving's counsel. Deputy Washburn informed counsel that he had responded to the call Mr. Ash made to the police. The deputy additionally advised counsel that Mr. Ash had testified inaccurately about the events. Young & Sons Paving thereafter sought to call Deputy Washburn as a rebuttal witness. The trial court held an in camera hearing and permitted Young & Sons Paving to call Deputy Washburn as a rebuttal witness.

Deputy Washburn testified on rebuttal that Mr. Young was not present when he responded to Mr. Ash's call. The deputy described Mr. Ash as being intoxicated, loud and boisterous. After Deputy Washburn's testimony, the jury retired to deliberate. The jury returned a verdict for Young & Sons Paving in the amount of $11,912.50. F.L.A. filed a post-trial motion for a new trial on the sole ground that the trial court erred in permitting Deputy Washburn to testify as a rebuttal witness. The court denied the motion and this appeal followed.

## II.

### STANDARD OF REVIEW

■ This Court has previously held that "[a]lthough the ruling of a trial court in granting or denying a motion for a new trial is entitled to great respect and weight, the trial court's ruling will be reversed on appeal

---

1.  Mr. Ash is the owner of Fast Lube America, Inc.

2.  It appears that the contract was modified at some point. The modification called for a reduction in the amount of area paved and the additional task of installing drains and drop-inlets. Under the original contract, F.L.A. agreed to pay

$16,250 for the work. Pursuant to the modified contract, it appears that F.L.A. was obligated to pay $11,912.50.

3.  Deputy Washburn was not the regular court bailiff. He was serving in this capacity on temporary assignment.

when it is clear that the trial court has acted under some misapprehension of the law or the evidence." Syl. pt. 4, *Sanders v. Georgia–Pacific Corp.*, 159 W.Va. 621, 225 S.E.2d 218 (1976). *See also* Syl. pt. 1, *Andrews v. Reynolds Memorial Hosp., Inc.*, 201 W.Va. 624, 499 S.E.2d 846 (1997). We noted recently in *Gum v. Dudley*, 202 W.Va. 477, 482, 505 S.E.2d 391, 396 (1997), that in reviewing an order denying a new trial, we review "the circuit court's final order and ultimate disposition under an abuse of discretion standard. We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed de novo." *Accord* Syl. pt. 4, *Burgess v. Porterfield*, 196 W.Va. 178, 469 S.E.2d 114 (1996).

## III.

## DISCUSSION

■ The record is clear. The trial court ordered sequestration of all witnesses. However, Deputy Washburn, who testified as a rebuttal witness, was not sequestered. Thus, F.L.A. argues that it is entitled to a new trial because the sequestration order was violated when Deputy Washburn was permitted to testify as a rebuttal witness.

We begin our analysis of this issue by addressing the basics. Rule 615 of the West Virginia Rules of Evidence states:

At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion. This rule does not authorize exclusion of (1) a party who is a natural person, or (2) an officer or employee of a party which is not a natural person designated as its representative by its attorney,

or (3) a person whose presence is shown by a party to be essential to the presentation of the party's cause.

■ We explained in syllabus point 2 of *State v. Omechinski*, 196 W.Va. 41, 468 S.E.2d 173 (1996), that

[t]he purpose of Rule 615 of the West Virginia Rules of Evidence is to prevent the shaping of testimony by one witness to match that of another and to discourage fabrication and collusion. The rule applies to rebuttal witnesses as well, and it is not significant whether the rebuttal witness has testified earlier in the case-in-chief.[4]

Obviously, a strict application of Rule 615 to rebuttal witnesses presupposes that a party knows in advance that he/she will call a specific rebuttal witness. That is, the sequestration rule, as a matter of law, does not apply to unknown rebuttal witnesses. *See United States v. Hargrove*, 929 F.2d 316 (7th Cir.1991); *People v. Caulley*, 197 Mich.App. 177, 494 N.W.2d 853 (Mich.App.1992); *State v. Shoemaker*, 488 So.2d 1084 (La.App. 2d Cir.1986); *Belachheb v. State*, 699 S.W.2d 709 (Tex.App.–Fort Worth 1985); *State v. Edwards*, 209 Kan. 696, 498 P.2d 53 (Kan.1972); *Stephens v. State*, 250 Ala. 123, 33 So.2d 245 (Ala.1947). Without such a principal of law, the general public could not sit in the courtroom to observe trial proceedings because of the remote possibility of being called as rebuttal witnesses once Rule 615 invoked. Although this Court in *Omechinski*, developed a test for determining whether to exclude the testimony of a previously-known rebuttal witness under Rule 615,[5] the test is not applicable to a rebuttal witness whose existence is

---

4. "There is a paucity of decisions on the subject in civil cases and courts seek enlightenment from cases developed in the criminal sphere." *Henderson v. Eastman Whipstock Pilot, Inc.*, 524 So.2d 850, 851 (La.Ct.App.3d Cir.1988).

5. This test is enunciated in syllabus point 7 of *Omechinski* as follows:

In making a ruling whether to exclude a rebuttal witness' testimony under Rule 615 of the West Virginia Rules of Evidence, a trial court should consider several factors including: (1) how critical the testimony in question

is—that is, whether it involved controverted and material facts; (2) whether the information ordinarily is subject to tailoring such that cross-examination or other evidence could bring to light any deficiencies; (3) to what extent the testimony of the witness is likely to encompass the same issues as other witnesses'; (4) in what order the witness would testify; and (5) if any potential for bias exists which may motivate the witness to tailor his or her testimony.

196 W.Va. 41, 468 S.E.2d 173.

not known until after the opponent's witness has testified.[6]

The factual circumstances of the sequestration issue in this case were addressed in the context of a criminal case in *Williams v. State*, 11 Ark.App. 11, 665 S.W.2d 299 (Ark. Ct.App.1984). The defendant in *Williams* was convicted of robbery and appealed. During the trial of the case, the defendant called a witness who testified that he (the witness) always went peacefully when arrested. The prosecutor was permitted to call the court's bailiff as a rebuttal witness to contest the veracity of the witness' statement that he always went peacefully when arrested. The defendant contended on appeal that it was error to allow the bailiff to testify on rebuttal because he was present during the entire trial in violation of the sequestration order. The appellate court disagreed. The court in *Williams* held that " '[t]he rule consistently applied by this court is that a violation by a witness of the rule of sequestration of witnesses, through no fault of, or complicity with, the party calling him, should go to the credibility, rather than the competency of the witness.' " *Williams*, 665 S.W.2d at 300, (*quoting Williams v. State*, 258 Ark. 207, 523 S.W.2d 377 (1975)). The conviction was affirmed. *Accord Burks v. Oklahoma Pub. Co.*, 81 F.3d 975 (10th Cir.1996); *United States v. Shurn*, 849 F.2d 1090 (8th Cir.1988); *Mestiza v. State*, 923 S.W.2d 720 (Tex.App.Corpus Christi 1996); *State v. Byerley*, 658 S.W.2d 134 (Tenn.Crim.App. 1983); *Wiseman v. State*, 168 Ga.App. 749, 310 S.E.2d 295 (Ga.App.1983); *People v. Miller*, 30 Ill.2d 110, 195 N.E.2d 694 (Ill.1964).

In the instant proceeding, Young & Sons Paving did not list Deputy Washburn as a fact witness or a rebuttal witness. It is undisputed that Young & Sons Paving was unaware of Deputy Washburn's information. In fact, nothing in the record reveals that Young & Sons Paving should have reasonably known it might call Deputy Washburn as a rebuttal witness. Thus, the sequestration order was not violated because of Deputy Washburn's rebuttal testimony. Therefore, the trial court did not err in denying F.L.A.'s motion for a new trial based upon the failure to sequester rebuttal witness Deputy Washburn.

### IV.

### CONCLUSION

In view of the foregoing, we affirm the circuit court's order denying F.L.A.'s post-trial motion for a new trial.

Affirmed.

STARCHER, Justice, dissenting:

(Filed Dec. 16, 1998)

In a very short period of time, a courtroom bailiff develops a remarkably close relationship with a jury. The bailiff wears a uniform and is an authority figure. The bailiff is an officer of the court. The bailiff shepherds the jurors through a novel and even somewhat frightening process. The bailiff occasionally brings food to the jury and often delivers personal messages for jurors. The jury must rely on and trust the bailiff.

This trust inescapably affects how jurors would view a bailiff's testimony. Simply stated, a jury is likely to give undue weight to "their" bailiff's testimony. Moreover, as an officer of the court, having a bailiff testify is indeed somewhat akin to having the judge testify.

The trial judge in the instant case should have refused the request to have the bailiff testify. Or, if justice required the bailiff's

---

6. Obviously, if a party learns of a rebuttal witness for the first time before both sides conclude their cases-in-chief, and the rebuttal witness is in the courtroom, an obligation exists under the sequestration order to immediately remove the rebuttal witness from the courtroom. Otherwise, the test outlined by *Omechinski* would have to be applied to determine whether the rebuttal wit-

ness should be allowed to testify. In the instant proceeding, counsel for Young & Sons Paving did not learn of Deputy Washburn's rebuttal information until after both sides had concluded their cases-in-chief. Therefore, Deputy Washburn's testimony was not governed under the sequestration order.

testimony, the judge should have declared a mistrial and allowed the bailiff to testify at a retrial, with someone else serving as bailiff.

The final result in this case may have been right, but we will never know that with any certainty, because the appellant certainly did not receive a fair trial.

Accordingly, I respectfully dissent.